IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARYANN BROTHERS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NASHVILLE 5G HOLDINGS, LLC, et al., <br><br> Defendants. <br><br> and <br><br> TEAIRA KING, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NASHVILLE 5G HOLDINGS, LLC, et al., <br><br> Defendants. | Case No.: 3:08-1166 <br> Judge Haynes |

## DAMAGES BRIEF

Pursuant to the Court's Case Management Order No. 2, the Defendants, Nashville 5G Holdings, LLC ("N5GH" or "Company"), John R. Isaac, Jr. ("Isaac"), and William McKechnie, by counsel, hereby submit their brief on the following issues "(1) what type of damages are recoverable in this case (under federal and state law) and, for each, whether the Court or the jury determines the amount; (2) how front pay, if any, will be reduced to present value; (3) whether there is any 'cap' on the amount of damages; and (4) whether the trial should be bifurcated regarding punitive damages" (the "Damages Brief"). Case Management Order, 3:08-cv-01166, Docket Entry #16.

1

## I. Recoverable Damages

For the reasons stated in the Defendants' Motions for Summary Judgment and their accompanying memoranda, the Plaintiffs have not set forth any legally cognizable claims and they are therefore not entitled to recover any damages. Even assuming, *arguendo*, that they had stated cognizable claims, (A) they have not adequately stated the damages they are claiming in either their initial disclosures or their responses to discovery, and they cannot submit any evidence pertaining to damages at trial; (B) their entitlement to back (and front) pay is limited or curtailed due to their subsequent employment or failure to mitigate; and (C) they are otherwise not entitled to certain categories of damages otherwise available under the applicable statutes and laws.

### *A) Plaintiffs Have Waived Right to Present Damages Evidence*

As will be set forth in more detail in Defendants' objections to Plaintiffs' pretrial disclosures (which are due on January 22), the Plaintiffs have failed to properly disclose their damage calculations or the evidentiary bases thereof, in either their initial disclosures or discovery responses. The consequences of these failures are clear, and are unambiguously stated in the Federal Rules of Civil Procedure (the "Rules"). *See* Fed. R. Civ. P. 26(a), (e), 33(b)(2), 37(c). Plaintiffs are foreclosed from presenting any evidence to establish their entitlement to any type of damages.

Plaintiffs were required, no later than 14 days after the initial scheduling conference, to make an initial disclosure of the "computation of each category of damages claimed," including making available "the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R.

Civ. P. 26(a)(i)(A)(iii), (C). They did not provide such computations, let alone any supporting evidence.

"A party is not excused from making its [initial] disclosures because it has not fully investigated the case" but, in any event, they are required to supplement disclosures as new information becomes available. Fed. R. Civ. P. 26(e). Plaintiffs also did not, at any point, amend their initial disclosures to include damages computations or any evidentiary bases for same. *Id.*

A party is also, of course, required to respond to the other party's interrogatories. Fed. R. Evid. 33. Defendants submitted interrogatories specifically requesting damages computations and the evidentiary bases for those calculations. See (Interrog. # 2 served on each plaintiff). Plaintiffs failed to comply with Rule 33, first by not providing such calculations and, again, by not amending their responses at such time that the information was available to them. Fed. R. Evid. 33, 26(e). Indeed, to this date, Defendants have not been provided with any information regarding the Plaintiffs' alleged damages.

The consequences of these failures are clear and unambiguous.

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Evid. 37(c) (also listing additional available sanctions including attorney's fees). The exclusion of evidence under Rule 37(c)(1) for failure to make a required disclosure is "a 'self-executing' or 'automatic' sanction, without need for a motion under 26(a)(2)(A)." *Automatic Logistics Productivity Improvement Sys., LLC v. UHY Advisors, Inc.*, 2006 U.S. Dist. LEXIS 48960 (E.D. Mich. July 19, 2006) (*citing* Advisory Committee Notes to FED. R. CIV. P. 37 (1998 Amendments)).

Despite this, Plaintiffs now purport to identify exhibits relating to damages in their pretrial disclosures. Plaintiffs cannot introduce evidence in this fashion. Nothing in the Rules permits the submission of damages evidence for the first time at this late a date and, indeed, the Rules have numerous specific requirements to the contrary. Fed. R. Civ. P. 26(a), (e), 33(b)(2), 37(c). Nor are these arbitrary procedural hoops; rather, Plaintiffs are required to submit detailed damage calculations early in the litigation because not doing so severely prejudices the defendants. Defendants cannot prepare a defense to the damages calculations if they are not aware of the bases for them. Indeed, in this case, Defendants still do not know what damages evidence Plaintiffs intend to submit – *and the Court's deadline for filing an ln Limine motion has already passed*.

Accordingly, Defendants respectfully request that the Court adhere to the "self-executing" and "automatic" exclusion of all evidence pertaining to damages that is unambiguously set forth in the Rules.

### B) *Subsequent Employment/Failure to Mitigate*

As discussed *infra*, Section I(C), back pay may be available to successful plaintiffs under Title VII and § 1981. However, a plaintiff's entitlement to back pay may be curtailed by subsequent employment or by their failure to mitigate their damages by diligently pursuing comparable employment. 42 USCS § 2000e-5(g) ("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.").

Here, each of the Plaintiffs' entitlement to back pay is reduced or eliminated by their subsequent employment or by their failure to mitigate by diligently seeking subsequent employment.

*i) Plaintiff MaryAnn Brothers*

Brothers efforts at finding subsequent employment have not been "reasonabl[y] diligen[t]" and her award of back pay (assuming, *arguendo*, that she would be entitled to any such award), should be reduced accordingly. (Brothers Dep. 241:25-244:11); 42 USCS § 2000e-5(g).

*ii) Plaintiff Stephen Cardinal*

Plaintiff Cardinal resigned from his job with Defendant and, as such, is not entitled to back pay. *See, e.g.*, *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 755 (3d Cir. 1997) ("Courts of appeals have been nearly unanimous [in holding that] victorious Title VII plaintiffs who have left their employment with the defendant but who were not constructively discharged by the defendant are only entitled to a remedy covering the period during which the discrimination occurred up to the date of resignation.") (internal quotation omitted).

Plaintiff Cardinal also obtained subsequent employment and then voluntarily left that employment. (Cardinal Dep. 217:3 – 218:20, 219:7-9). Assuming, *arguendo*, that he could establish an entitlement to any back pay, the amount of such back pay must be reduced, from the date he obtained subsequent employment, to the difference between his salary with Defendant (approximately, $80,000/yr.) and his salary at his new position (approximately $60,000); i.e., to approximately $20,000. 42 USCS § 2000e-5(g); (Cardinal Dep. 217:3 – 218:20, 219:7-9). Because he voluntarily quit his new job, his entitlement to back pay does not resume when that employment ended. *See e.g., Senello v. Reserve Life Ins*. Co. 667 F. Supp. 1498, 1514, 1518-19 (S.D. Fla. 1987) *aff'd* 872 F.2d 393 (11th Cir. 1989) (plaintiff's resignation from comparable position was failure to

mitigate); *EEOC v. Domino's Pizza, Inc*., 1983 U.S. Dist. LEXIS 19522 ( E.D. Mich. Feb. 3, 1983) (back pay period did not resume when plaintiff quit a better-paying job).

       *iii) Plaintiff James Newman*

Plaintiff Newman was offered subsequent employment, and briefly began work for that new employer, but was promptly terminated for lying on his application. (Newman Dep. 8:16 – 9:16) (Acknowledging that he was terminated when Captain D's discovered that, contrary to what was stated in his application, Newman had been convicted of a felony in the past 7 years). A plaintiff's entitlement to back pay does not resume after a for-cause termination. *Brady v. Thurston Motor Lines, Inc*., 753 F.2d 1269, 1277-79 (4th Cir. 1985) (subsequent discharge tolls the back-pay period; plaintiff must exercise reasonable diligence in maintaining employment). His entitlement to back pay is thus cut off on the date he began (and ended) his comparable employment. 42 USCS § 2000e-5(g); *and see, e.g., Smith v. American Serv. Co.,* 38 FEP 377, 378-79 (N.D. Ga. 1985) (back pay period ended when plaintiff accepted comparable employment) *aff'd in relevant part* 796 F.2d 1430 (11th Cir. 1986).

Additionally, although it is disputed, Defendants contend that Newman was offered the option of either resigning with a severance payment or taking a demotion to a Shift Leader position when N5GH determined to eliminate two Assistant Manager positions. Newman elected to resign, and accepted severance, in lieu of accepting the Shift Leader position. As such, if it shown that he did in fact resign, he is not entitled to back pay. *See, e.g*., *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 755 (3d Cir. 1997) ("Courts of appeals have been nearly unanimous [in holding that] victorious Title VII plaintiffs who have left their employment with the defendant but who were not constructively

discharged by the defendant are only entitled to a remedy covering the period during which the discrimination occurred up to the date of resignation.") (internal quotation omitted).

### *iv) Plaintiff Teaira King*

Plaintiff Teaira King secured subsequent employment the day after her termination. (King Dep. at 8:4-10:15, 122). Accordingly, her award of back pay award, if any, must be reduced by an amount equal to the total compensation she has received from her subsequent jobs. 42 USCS § 2000e-5(g).

### *v) Front Pay*

Additionally, as discussed *infra*, Section I(C), none of the plaintiffs are entitled to front pay, in part due to the subsequent employment or failure to mitigate discussed in this section. *Roush v. KFC Nat'l Management Co.*, 10 F.3d 392, 397-400 (6th Cir. 1993).

### *C) Damages Available*

Where a plaintiff has cognizable claims, and has satisfied the procedural prerequisites for presenting damages evidence, the following categories of damages may be available pursuant to the following causes of action. However, some of the available categories are unavailable to Plaintiffs or individual Plaintiffs for the reasons stated below.

### <u>*i) Title VII*</u>

Under Title VII, successful plaintiffs may recover back pay. 42 USCS § 2000e-5(g). The amount of back pay damages to be awarded is determined by a jury. However, the amount of back pay available is limited both by the statute (*see infra*, Section III concerning caps) and by a plaintiff's failure to mitigate their damages by seeking

alternate employment (*see supra*, Section I(B)).

Compensatory damages other than back pay are also available under Title VII if the jury determines that the discrimination was "intentional." 42 USCS § 1981a(b)(2). These additional compensatory damages may include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *Id*. When available, the amounts of such compensatory damages are determined by a jury. *Roush v. KFC Nat'l Management Co.*, 10 F.3d 392, 397-400 (6th Cir. 1993).

In the instant matter, no compensatory damages are available to the Plaintiffs because Plaintiffs are unable to establish the required intentional discrimination.

Whether front pay is appropriate must be determined by a judge, and only after the judge determines that front pay is appropriate may the jury determine the amount. *Roush v. KFC Nat'l Management Co.*, 10 F.3d 392, 397-400 (6th Cir. 1993) (discussing front pay in ADEA context but analogizing to Title VII discrimination). In determining whether to permit front pay recovery, the judge will consider "an employee's duty to mitigate, the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards." *Id*. at 399 (internal quotation omitted).

Here, an award of front pay is not appropriate. As stated *infra* in Section I(B), Plaintiffs have secured subsequent employment or have not satisfied their "duty to mitigate." *Id*. Moreover, there is no reason why reinstatement would be impractical.

Punitive damages are also potentially available under Title VII where a plaintiff

establishes that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." § 1981a(b)(1). However, punitive damages are appropriate "only in the most egregious cases." *White v. Burlington North & Santa Fe Railway Company*, 364 F.3d 789 (6th Cir. 2004)(en banc); *Sackett v. ITC Deltacom, Inc.,* 374 F. Supp. 2d 602, 618-19 (E.D. Tenn. 2005).

Courts must act as "gatekeepers" and first determine that punitive damages are available before submitting the question of amount to the jury. *Sackett,* 374 F. Supp. 2d at 618-19. The plaintiff bears the burden to prove, by a preponderance of evidence, that the defendant acted with "malice or with reckless indifference to the federally protected rights." Id. at 619. If the court determines that the plaintiff has not met this burden, punitive damages instructions will not be submitted to the jury and no such damages will be awarded. Id. In the instant matter, no compensatory damages are available to the Plaintiffs because even assuming, *arguendo*, that they could establish liability for discrimination, such liability was not undertaken with "malice or with reckless indifference to …federally protected rights" with regards to N5GH, Defendant Isaac, and/or Defendant McKechnie.

Defendants are not liable under Title VII in their individual capacities, and none of the above categories of damages are available against Defendants Isaac or McKechnie. *Wathen v. GE*, 115 F.3d 400, 405 (6th Cir. 1997) ("We now hold that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."); *Bangas v. Potter,* 145 Fed. Appx. 139, 141 (6th Cir. Ohio 2005) (ibid.).

Finally, Plaintiff may not recover duplicative damages under Title VII and § 1981 or the THRA. § 1981a(b)(1); *Cf. Russo v. Matson Navigation Co.*, 48 F.2d 1018, 1020 (9th Cir. 1973) (citing *U.S. v. Price*, 288 F.2d 448, 449 (4th Cir. 1961)); *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 534 (9th Cir. 1962) ("[T]he broad rule seems to be that where the plaintiff receives from the tortfeasor payments specifically to compensate him for his injury, the tortfeasor need not pay twice for the same damage, and therefore such compensation payments should be taken into account in fixing tort damages."); *see generally Copeland Oaks v. Haupt*, 209 F.3d 811, 814 (6th Cir. 2000); *Brice v. Nat'l R.R. Passenger Corp.*, 664 F. Supp. 220, 221-22 (D. Md. 1987).

### *ii) § 1981*

Back pay and other compensatory damages, as well as punitive damages, are available under § 1981 but, for the reasons stated above, such damages should be unavailable or limited in the instant action. *Supra*, Section I(C)(i); Mitchell v. DCX, Inc., 274 F. Supp. 2d 33 (D.D.C. 2003) ("The punitive damages standard for § 1981 is the same as the punitive damages standard under Title VII."); *Jin Ku Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir. Iowa 1997) ("The standard for punitive damages is the same under Title VII, 42 U.S.C. § 1981a(b)(1) (malice or reckless indifference to federally protected rights), and § 1981").

Plaintiff may not recover duplicative damages under § 1981 and Title VII or the THRA. § 1981a(b)(1); *see also supra*, Section I(C)(i).

### *iii) Tennessee Human Rights Act*

The Tennessee Human Rights Act ("THRA") provides only for "actual damages sustained by [the] plaintiff" along with costs and reasonable attorney's fees. Tenn. Code

10
Case 3:08-cv-01166   Document 95   Filed 01/15/10   Page 10 of 15 PageID #: 2420

Ann. §4-21-311(b).  Punitive damages are thus not available to Plaintiffs under the THRA.  *Id* (punitive damages only available in housing claims); *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997).

Defendants Isaac or McKechnie also cannot be held liable for any damages under the THRA in their individual capacities because the THRA does not create liability for "taking any [adverse] actions … that are within the legitimate scope of [supervisor]'s delegated management authority". *Crutchfield v. Aerospace Ctr. Support*, 1999 U.S. App. LEXIS 32765 (6th Cir. Tenn. Dec. 14, 1999); *McNeail-Tunstall v. Marsh USA*, 307 F. Supp. 2d 955, 974 (W.D. Tenn. 2004) ("Tennessee courts hold that the THRA generally does not impose individual liability on supervisors or co-workers.") Individual defendants may be liable under the THRA on an *accomplice* theory but here "the record is devoid of any proof that [defendants] aided, abetted, incited, compelled or commanded *another person* to engage in a discriminatory act against [plaintiff] within the meaning of Tenn. Code Ann. § 4-21-301(2)." *Crutchfield*, 1999 U.S. App. LEXIS at *5-6 (emphasis in original).

Plaintiff may not recover duplicative damages under the TNHRA and § 1981 or Title VII. § 1981a(b)(1); *see also supra*, Section I(C)(i).

### *iv) Common Law Outrage*

None of the Plaintiffs can recover damages for common law "outrage" (i.e. intentional infliction of emotional distress).  *Moorhead v. J.C. Penney Co., Inc.*, 555 S.W.2d 713, 717 (Tenn. 1977).  The Tennessee Supreme Court recognizes the tort of outrageous conduct as the following: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to

11

liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (*quoting* Restatement (Second) of Torts § 46(1)). A cause of action for outrageous conduct under Tennessee law requires, inter alia, that "the conduct complained of must result in serious mental injury." *Id. Cf. Jenkins v. Nashville Public Radio*, 2005 U.S. Dist. LEXIS 33280, *10 (M.D. Tenn. Dec. 9, 2005) (outrage standard is "an extremely high standard for plaintiff to meet"). The "serious mental injury" is thus both a substantive requirement of the claim and the scope of the compensatory damages available (i.e., if the intentional and "outrageous" conduct causes a serious mental injury, the plaintiff may recover for that serious mental injury). None of the Plaintiffs can establish such a "serious mental injury" as a matter of law. *Id.* (evidence of serious mental injury required to state *prima facie* case) (*citing Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); (Brothers 241:25-244:3) (King Dep. 123-125:1); (Newman 91:18-20); (Cardinal Dep at 244).

Punitive damages are also available pursuant to claims of "outrage" but, for the reasons stated above, record's failure to establish any Plaintiff's "serious mental injury" forecloses all forms of recovery under this cause of action.

## II.     Front Pay Reduction To Present Value

As discussed *supra*, Section I, front pay is not available to the plaintiffs in this case. Where front pay is available, courts may use a "total offset approach" (whereby they refrain from adding future salary increases to any award) in lieu of reducing to present value. *Ind. Mich. Power Co. v. United States DOL*, 278 Fed. Appx. 597 (6th Cir. 2008) *citing Jackson v. City of Cookeville*, 31 F.3d 1354, 1361 (6th Cir. 1994). That is, the omitted additions and reductions to the front pay are presumed to "offset" one

another.

**III.  Damages "Caps"**

Under Title VII, the Plaintiff may not recover back pay accruing more than two years prior to their EEOC charges.  42 USCS § 2000e-5(g).  As discussed *supra*, Section I, the availability of back pay is also limited by Plaintiffs' failure to mitigate by pursuing comparable employment.  Id. ("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.")

Under Title VII, punitive damages as well as compensatory damages other than back pay are also capped depending on the number of individuals employed by defendants.  Where, as here, the employer employed fewer than 100 employees during all relevant times, compensatory and punitive damages are capped at $ 50,000.  42 USCS § 1981a(b)(3)(A).

The cap applies to *all* claims under Title VII such that a plaintiff cannot recover, for example, $50,000 for wrongful discrimination under Title VII and also $50,000 for retaliation under that statute.  *Hudson v. Reno*, 130 F.3d 1193, 1200 (6th Cir. 1997).

**IV.  Bifurcation of Trial Regarding Punitive Damages**

As discussed *supra*, Section I, this Court should exercise its "gatekeeper" function to exclude punitive damages.  If Plaintiffs are allowed to advance a theory of entitlement to punitive damages, however, this matter must be bifurcated into separate trials regarding liability and punitive damages.

 In *Kolstad*, the Supreme Court held that the Title VII standard for punitive damages was higher than that for liability. *Kolstad v. American Dental Assoc.*, 527 U.S.

526, 529-30, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999). "In light of *Kolstad*, federal district courts, as well as the Sixth Circuit, have concluded that the punitive damages aspect of the trial must be bifurcated from the liability and compensatory damages aspect of the trial." *Eid v. Saint-Gobain Abrasives, Inc.*, 2008 U.S. Dist. LEXIS 41069 ( E.D. Mich. May 23, 2008) (internal quotation omitted); *Sackett v. ITC Deltacom, Inc*., 374 F. Supp. 2d 602, 604 (E.D. Tenn. 2005) ("As is the Court's practice since *Kolstad*, the punitive damages aspect of the trial was bifurcated from the liability and compensatory damages aspect of the trial."). Pursuant to circuit practice then, any consideration of punitive damages must be considered separately through bifurcated trials.

Respectfully submitted,

**NASHVILLE 5G HOLDINGS, LLC, JOHN R. ISAAC, and WILLIAM MCKECHNIE**

/s  D. Earl Baggett
       Counsel

King F. Tower (admitted *pro hac vice*)
Virginia State Bar No. 38767
D. Earl Baggett (admitted *pro hac vice*)
Virginia State Bar No. 50910
WILLIAMS MULLEN, P.C.
P.O. Box 1320
Richmond, Virginia 23218-1320
Telephone: (804) 643-1991
Facsimile:  (804) 783-6507
ktower@williamsmullen.com
ebaggett@williamsmullen.com

W. Scott Sims
WALKER, TIPPS & MALONE
2300 One Nashville Place
Nashville, TN 37219
Tel.: 615.313.6004
Fax: 615.313.6002
sims@walkertipps.com
    *Counsel for Defendant, Nashville 5G Holdings LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney for Defendants hereby certifies that on this 15th day of January, 2010, a copy of the foregoing Damages Brief has been electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following Attorneys for Plaintiffs:

    Stephen W. Grace Esquire
    1019 16th Avenue, South
    Nashville, Tennessee 37212

    Douglas B. Janney III, Esquire
    2002 Richard Jones Road
    Suite B-200
    Nashville, Tennessee 37215

                         /s D. Earl Baggett
                         *Attorney for Defendants*

7265480_2.DOC